Petroplus, Judge:
Charleston Construction, Inc., the claimant, filed a claim in the amount of $2,412.19, with interest thereon from July 1, 1965, arising from work done on Project 1-64-160 (10) in Cabell County. The respondents have filed no Answer, and the case is submitted on a stipulation admitting the facts and the amount of damages as alleged in the Notice of Claim. The Construction Agreement has not been made a part of the Record and the facts are sketchily presented.
It appears from the stipulation that the claimant at approximately 1:45 P.M. on June 30, 1965, received a shutdown letter from the Project Supervisor of the State Road Commission suspending its work as Contractor on the Project on the ground that the sand used on the Project did not meet specifications. *206 Five or six samples had been tested for gradation on the No. 100 Sieve in the testing laboratory of the respondents and more material passed through the sieve than the specifications allowed thereby appearing not to meet the specifications. The Contractor had just received a new shipment of sand, and assuming that the new product was not specification material, it began to separate the sand into stock piles in the hope that specification sand could be found and that the work might be resumed. It is not clear from the Complaint why this stockpiling was necessary. The Contractor instructed its men to report for work the following day. On July 1, 1965, the following day, another sample was taken and failed to meet specifications, and the Contractor sent its men home. Subsequent examination of the sieves in use by the testing laboratory of the State Road Commission revealed that the No. 100 Sieve had worn thin around the edge to such an extent that one opening had been enlarged to two or more in several areas on the sieve, or in other words, that the testing device was defective. It is not stipulated that the State Road Commission knew or in the exercise of reasonable care should have known that the testing device was defective. Immediately upon this discovery, a new sieve was substituted and passing gradations were obtained on the sand previously rejected. The State Road Commission personnel were advised of this at approximately 11:00 A.M. on July 1, 1965, and the Contractor was notified accordingly. The Contractor then re-combined the stock piles of sand for use.
The Contractor contends that it should be compensated for equipment rental sustained during the period of shutdown, the show-up time paid for the men during the delay, and for the time and equipment used in re-handling the sand, as well as for the material lost in re-handling.
The Specifications of the State Road Commission provide that materials failing to meet the requirements of these Specifications shall not be used, and that the Contractor shall furnish samples when required. All materials are to be approved before being incorporated in the work. The duration of the suspension of the work because of the defective laboratory tests was from 1:45 P.M. on one day until 11:00 A.M. of the next day. The prosecution of the work was delayed for a very short period of time, and even if we assume that the respondents were guilty of *207 negligence in not having proper equipment on hand in the materials testing laboratory, when the error was discovered, a correction was made and the Contractor was promptly notified that the material met specifications. The Contractor’s work was not unreasonably delayed, although it is admitted there was an unjustified delay of a few hours.
It is the opinion of this Court that the claimant is entitled to reasonable compensation for any damages resulting from the improper isssuance of the shutdown order, but only for such damages as are the direct and proximate consequence of the shutdown order.
The unnecessary and additional stock piling of the sand in the hope that specification sand could be found appears to have been done in good faith and should be a proper item for compensation. Therefore, the claim for moving stock piles is allowed in the amount of $625.68. The equipment rental loss representing rental of various items of equipment on the job for an eight-hour period, in the opinion of this Court, is not com-pensable, as the equipment was already installed on the Project and could not have been removed and put to profitable use elsewhere and returned to the Project within the short duration of the temporary suspension. The equipment rental is an item of overhead that the Contractor would be required to pay whether or not the work had been suspended. This item in the aggregate amount of $1,166.24 is disallowed because of the minimum duration of delay. The State Road Commission has the discretion to suspend work if it deems it to be for the best interests of the State.
The show-up item claimed for the men who were ordered to return to work on July 1st, and sent home after another sample was taken, which failed to meet specifications, is allowed in the amount of $137.62, as a proximate item of damage. The cost of the sand wasted because of the re-handling of the material in a quantity of 197 tons, the stipulated amount, is allowed in the amount of $482.65, as a proper item of damage.
The Court is of the opinion, therefore, to award the claimant the sum of $1,245.95, said sum representing the aggregate of the above mentioned items allowed as damages for the erroneous temporary suspension of the work. It is the further *208 opinion of this Court that being unliquidated damages resulting from the suspension of the work, that no interest may be allowed from July 1, 1965, to the date of this Opinion.
Claim allowed in the amount of $1,245.95.